

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-26-00110-CV

**IN THE INTEREST OF W.J.G.G.**, a Child

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2025-PA-00492
Honorable Charles E. Montemayor, Judge Presiding

Opinion by: Lori Massey Brissette, Justice

Sitting: Irene Rios, Justice
Lori Massey Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: July 1, 2026

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

This case involves the termination of a father's parental rights to one child, W.J.G.G., who was less than a year old at the time of trial.[1] Although we find legally insufficient evidence for termination under Texas Family Code section 161.001(b)(1)(E), Father does not challenge termination under Texas Family Code section 161.001(b)(1)(N) or (P). Ordinarily, we must affirm on those grounds not challenged. However, we also find the evidence factually insufficient to support the trial court's finding that termination is in the best interest of W.J.G.G. Accordingly,

---

[1] To protect the identity of the minor child, we will refer to the parents as "Mother" and "Father" and to the child by his initials, W.J.G.G. *See* TEX. FAM. CODE §109.002(d); TEX. R. APP. P. 9.8(b). Mother signed an affidavit relinquishing her parental rights post-trial.

we affirm on those grounds not challenged, reverse the trial court's finding that termination is in the best interest of W.J.G.G., and remand the cause to the trial court for a new trial to determine whether termination is in W.J.G.G.'s best interest.

## BACKGROUND

Mother and Father had one child together, W.J.G.G. Prior to W.J.G.G being conceived, Father served time in federal prison after being convicted of conspiracy to transport persons who had entered the country illegally. After serving that sentence and while on parole, Father violated a condition of his parole by testing positive for methamphetamines. This also occurred before the child was conceived. After the child was conceived but before he was born, Father was incarcerated for the parole violation. Upon the child's birth, Mother requested the child be placed with her aunt—a woman who also cares for Mother's other children—and the child was placed with her.

After a final trial on January 15, 2026, the trial court issued an order terminating Father's rights under Texas Family Code section 161.001(b)(1)(E), (N), and (P). TEX. FAM. CODE § 161.001(b)(1)(E), (N) & (P). On appeal, Father challenges the findings of termination only on the section 161.001(b)(1)(E) ground and that termination is in the best interest of the child under Texas Family Code section 161.001(b)(2).

## STANDARD OF REVIEW

A suit involving the potential termination of a parent's right to a child is of constitutional import. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied). We must therefore strictly scrutinize termination proceedings and construe involuntary termination statutes strictly in the parent's favor. *In re H.S.*, No. 24-0307, ___ S.W.3d ___, 2026 WL 1614496, at *6–7 (Tex. June 5, 2026); *see, e.g.*, *D.V. v. Tex. Dep't of Fam. & Protective Servs.*, 722 S.W.3d

854, 858 (Tex. 2025); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). But a parent's rights "are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). Striking that balance, a trial court may terminate a parent-child relationship, pursuant to Texas Family Code section 161.001, only if it finds by clear and convincing evidence one predicate ground enumerated in subsection (b)(1) and that termination is in the child's best interest. TEX. FAM. CODE § 161.001(b)(1)–(2); *see, e.g.*, *In re C.E.*, 687 S.W.3d 304, 308 (Tex. 2024). Clear and convincing evidence requires proof that will produce in the factfinder's mind "a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. This heightened standard "guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.).

When reviewing the evidence in a parental termination case, we apply the well-established standards associated with both a legal and factual sufficiency review. *In re J.M.G.*, 608 S.W.3d 51, 53 (Tex. App.—San Antonio 2020, pet. denied). First, in a legal sufficiency review, we "view the facts in a light favorable to the findings of the trial judge, who heard the testimony, evaluated its credibility, and dealt the closest with the evidence at hand." *In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024) (quoting *In re J.F.-G.*, 627 S.W.3d 304, 315 (Tex. 2021)) (internal quotation marks omitted). We will not substitute our own judgment for that of the factfinder. *Id.* Instead, the factfinder is the sole judge of evidentiary weight and credibility, including witness testimony. *Id.* We will "defer to the [factfinder's] determinations, at least so long as those determinations are not

themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)) (internal quotation marks omitted).

In our review, we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Although we will disregard all evidence contrary to a factfinder's determination if a reasonable factfinder could have disbelieved or found it to have been incredible, we will not disregard undisputed evidence even if it does not support the trial court's finding. *Id.*; *see, e.g.*, *C.E.,* 687 S.W.3d at 308.

In our factual sufficiency review, we consider the entire record and determine whether the evidence contrary to the trial court's ruling "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" on the challenged finding. *J.F.C.*, 96 S.W.3d at 266.

### SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE PREDICATE GROUNDS FOR THE TRIAL COURT'S TERMINATION OF FATHER'S PARENTAL RIGHTS

Father's parental rights were terminated pursuant to multiple predicate grounds under Section 161.001(b)(1), specifically (E), (N), and (P). But Father challenges only the trial court's finding that termination is proper under Texas Family Code section 161.001(b)(1)(E). Because only one predicate violation under section 161.001(b)(1) is necessary to support a termination order, regardless of the evidentiary support for termination under Subsection (E), we must affirm the judgment on the other grounds. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re C.U.D.*, No. 14-21-00427-CV, 2022 WL 711104, at *10 (Tex. App.—Houston [14th Dist.] Mar. 10, 2022, pet. denied) (mem. op.). Even so, we must still consider Father's issue relating to the sufficiency of the evidence to support the trial court's findings under Subsection (E) because termination under that subsection may serve as the basis for a termination of Father's parental rights to other children in the future. *See In re R.R.A.*, 687 S.W.3d 269, 279 (Tex. 2024); *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019).

**TERMINATION OF PARENTAL RIGHTS UNDER SUBSECTION (E)**

To terminate parental rights under Texas Family Code section 161.001(b)(1)(E), the Department must show—by clear and convincing evidence—that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Under this subsection, the focus is on the effect of the parent's conduct, which must be the result of a conscious course of conduct rather than a single act or omission. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). It is not necessary for a parent's conduct to be directed at the child or that the child be injured; a child is endangered if the environment or the parent's course of conduct creates a potential for danger the parent is aware of but disregards. *In re R.S.-T.*, 522 S.W.3d 92, 110 (Tex. App.—San Antonio 2017, no pet.); *see also In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[E]ndangering conduct is not limited to actions directed towards the child."). In fact, we may consider conduct that did not occur in the child's presence. *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *3 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.).

Father testified that he is currently serving a sentence at Three Rivers Federal Detention Facility for a parole violation involving a positive urinalysis showing methamphetamine usage in May of 2024, almost a full year before the child was born and before the child was even conceived. There was no evidence of usage by Father before or after May of 2024. Father also testified that he is set to be released from incarceration on June 17, 2026 but will then have twelve months of supervised release after that date. Finally, Father testified that, since the child was born, he has engaged in classes while incarcerated (parenting class, drug abuse class, cognitive thinking, and

anger management), was engaged with the child in visits via videoconference as long as the Department allowed, and even attended the child's doctor's visit via videoconference.[2]

The first question under Subsection E is whether there is some evidence that Father "engaged in conduct . . .which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). The Department argues Father's "drug use and consistent incarceration show a course of conduct that endangers [the child's] physical and emotional well-being."

But, the only evidence of Father's "drug use" is a single positive test result that occurred before W.J.G.G. was even conceived. The Texas Supreme Court has explained, illegal drug use alone—much less a lone, positive drug test—is insufficient to demonstrate endangerment because it is not "a pattern of parental behavior that presents a substantial risk of harm to the child." *R.R.A.*, 687 S.W.3d at 278; *see, e.g.*, *In re K.N.*, No. 24-0881, ___ S.W.3d ___, 2026 WL 1614378, at *14 (Tex. June 5, 2026) (same, quoting *R.R.A.*); *In re C.V.L.*, 591 S.W.3d 734, 751–52 (Tex. App.—Dallas 2019, pet. denied) (providing "finding of endangerment based on drug use alone is not automatic" and concluding evidence of subsection (E) factually insufficient because it did not rise to course of conduct where father used methamphetamines on two occasions). Instead, we must consider additional evidence that a factfinder could reasonably credit that demonstrates that the illegal drug use presented a risk to the parent's ability to parent their child. *See K.N.*, 2026 WL 1614378, at *14. This is not a case where the Department alleged Father used drugs in front of the child, missed multiple drug tests, left the child in the care of drug users, or was ever charged with

---

[2] Normally, in a legal sufficiency review we would begin and end with the evidence supporting the trial court's judgment, but other than Father's testimony, there was no evidence offered going to Father's conduct. Although the trial court, as sole arbiter of the credibility of witnesses and weight to be given the testimony, can certainly choose not to believe Father's testimony, there is simply nothing else in the record on which the trial court could have relied.

drug possession. *See C.V.L.*, 591 S.W.3d at 752.[3] Indeed, we have found no caselaw where a parent's rights were terminated based on a lone drug test, much less one administered before the child was even *conceived*. *Accord. In re A.S.*, 261 S.W.3d 76, 87 n.13 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("We are unaware of any cases in which a single use of marijuana—or any drug—during pregnancy has, alone, been held sufficient to constitute a "course of conduct" to support termination under subsection (E)."). This case is more akin to the Austin Court of Appeals' decision in *In re M.G.P.*, where our sister court found the evidence insufficient to support termination when a mother's alleged drug use was limited to the time before she knew that she was pregnant and the mother quit using drugs when she learned that she was pregnant. *See* No. 02-11-00038-CV, 2011 WL 6415168, at *11 (Tex. App.—Fort Worth Dec. 22, 2011, pet. denied) (mem. op.).

And given the far-reaching implications of a finding of termination under Subsection E, specifically that it can be used to terminate Father's rights to other children in the future, it is particularly troublesome to rely on a single act committed by a person before they became a parent at all. *See* TEX. FAM. CODE § 161.001(b)(1)(M). This is not a case where the Department contends Father chronically used, was addicted, or occasionally used drugs while he was with the children. *See K.N.*, 2026 WL 1614378, at *14. Accordingly, that one test result, showing conduct before Father was even aware he would be a father, is not evidence sufficient to produce in the factfinder's mind "a firm belief or conviction as to the truth of the allegations sought to be established"—

---

[3] Nor is it a case where Father used illegal drugs both before and after the child's birth, establishing a course of conduct, or where a mother used illegal drugs during the pregnancy, directly endangering the child's physical health. *See, e.g.*, *In re A.M.*, No. 02-24-00199-CV, 2024 WL 4157766, at *12 (Tex. App.—Fort Worth Sept. 12, 2024, pet. denied) (drug use during pregnancy); *In re J.A.V.*, 632 S.W.3d 121, 131 (Tex. App.—El Paso 2021, no pet.) (drug abuse both before and after child's birth).

specifically that Father engaged in a course of conduct that created a potential for danger which he was aware of but chose to disregard.

But we may not evaluate Father's lone, positive drug test in isolation; we must perform a "holistic" endangerment review and consider the conduct in "aggregate," i.e., alongside Father's incarceration. *In re A.V.*, 697 S.W.3d 657, 659 (Tex. 2024) (per curiam) (citing *R.R.A.*); *R.R.A.*, 687 S.W.3d at 278, 281. Allowing imprisonment to constitute sufficient evidence of endangerment under Subsection (E), without more, would mean "termination of parental rights could become an additional punishment automatically imposed along with imprisonment for almost any crime." *In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2001, pet. denied); *see, e.g.*, *K.N.*, 2026 WL 1614378, at *13 (providing isolated criminal misconduct resulting in incarceration does not necessarily suffice if it does not, standing alone, demonstrate engaging in conduct which endangers emotional or physical well-being of child). And again, given the ramifications of a termination under Subsection E, not just for this child but for any other child Father might have in the future, such an automatic sanction would certainly raise constitutional concerns.

Instead, a parent's criminal history—taking into account the nature of the crime, the duration of incarceration, and whether there is a pattern of escalating, repeated convictions—may support an endangerment finding. *J.F.-G.*, 627 S.W.3d at 313. Here, Father served a full prison sentence, prior to the child being conceived, for conspiracy to transport persons who had entered the country illegally—a crime, the nature of which, does not necessarily involve violence or drug use. *See id.*; *see also K.N.*, 2026 WL 1614378, at *13 (holding termination implicates foundational rights that require government to clear high bar—and not all criminal misconduct "justifies this most draconian of sanctions"); *In re E.N.C.*, 384 S.W.3d 796, 805 (Tex. 2012) (rejecting contention that any offense that could lead to imprisonment or confinement would establish

endangerment). Since then, Father has been convicted of no other crimes. Nor is there any indication that Father endangered the safety of a child that had not yet been conceived when he was incarcerated for conspiracy. *See J.F.-G.*, 627 S.W.3d at 313; *In re F.M.E.A.F.*, 572 S.W.3d 716, 733 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). At the time of trial, Father was incarcerated for a parole violation based on a single positive drug test—the same drug test the Department cites as support for its contention he was "consistent[ly] incarcerat[ed]" and therefore subject to termination under (E). But one conviction for a nonviolent, non-drug-related crime, resulting in incarceration before the child was conceived, followed by incarceration for a lone, positive drug test parole violation, can hardly support "a pattern of escalating, repeated convictions" demonstrating a course of conduct that endangers a child. *J.F.-G.*, 627 S.W.3d at 313. And Father was scheduled to be released in June of 2026. *See J.F.-G.*, 627 S.W.3d at 316 ("Not all incarceration means that a parent will be absent from a child's life for a lengthy duration.").[4]

In short, one nonviolent conviction and one drug test resulting in a parole violation—all before a child was conceived—are not enough. Accordingly, we do not find legally sufficient evidence to support termination under Texas Family Code section 161.001(b)(1)(E) and, for that reason, modify the final judgment to delete Subsection (E) as a ground for termination of Father's rights. *See R.R.A.*, 687 S.W.3d at 278; *A.V.*, 697 S.W.3d at 659.

### LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING THAT TERMINATION IS IN THE BEST INTEREST OF THE CHILDREN

Father also argues the evidence was legally and factually insufficient to support the trial court's findings that termination of his parental rights is in the best interest of the child. Under

---

[4] Father was the only witness to testify regarding his release date, and no evidence was offered in dispute of his testimony. Thus, the only evidence before the court was that Father would be released from incarceration in June of 2026 and would have twelve months of supervised release after that. Although the trial court may have questioned his testimony, there was no evidence offered to refute it.

Texas law, "there is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Terminating parental rights "must always be a last resort and never a first impulse." *K.N.*, 2026 WL 1614378, at *1. However, a trial court must also presume "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE § 263.307(a). In making a best-interest determination, the factfinder looks at the entire record and considers all relevant circumstances. *C.H.*, 89 S.W.3d at 27–29.

The Texas Legislature codified certain factors to use in determining the best interest of a child, including: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal change within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with adequate health and nutritional care, appropriate discipline, a safe physical home environment, and protection from repeated exposure to violence; (13) and whether

an adequate social support system is available for the child. TEX. FAM. CODE § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 n.29 (Tex. 2018).

Even before the Legislature took action to codify section 263.307(b), the Texas Supreme Court, in *Holley v. Adams*, identified factors to determine the best interest of a child, including: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. 544 S.W.2d 367, 371–72 (Tex. 1976).

The Department does not have to prove every factor for a trial court to find termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27. In our review of the trial court's best-interest findings, we must consider "the totality of the circumstances" in light of these factors to determine whether sufficient evidence supports the challenged finding. *In re B.F.*, No. 02-07-334-CV, 2008 WL 902790, at *11 (Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op.). Additionally, "[a] trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

But the Department barely put on any evidence demonstrating W.J.G.G.'s best interest. *See H.S.*, 2026 WL 1614496, at *13 ("Just as striking as what the record contains is what it does not contain. . . . When a family's continued existence is on the line and the department must produce

clear and convincing evidence, Texas courts may not just presume that supporting evidence exists in some undisclosed location."); *In re T.J.I.L.*, No. 01-23-00693-CV, 2024 WL 1169526, at *12 (Tex. App.—Houston [1st Dist.] Mar. 19, 2024, no pet.) (mem. op.) ("In some cases, undisputed evidence of only one factor may be sufficient to support a finding that termination is in the child's best interest; in other cases, there could be 'more complex facts in which paltry evidence relevant to each consideration mentioned in *Holley* would not suffice' to support termination." (quoting *C.H.*, 89 S.W.3d at 27)). No evidence was offered at trial going to the child's physical or mental vulnerabilities other than his age, being just over one year old at the time of trial. The child is stable, placed with his maternal aunt and siblings. He has not been the subject of harm, and there has been no psychiatric, psychological, or developmental evaluations done. There was no evidence of abusive or assaultive conduct. There was evidence that Father tested positive on a drug test before the child was conceived and that Mother gave up the child knowing she could not care for the child. Father has been incarcerated, but he has sought out classes for parenting, cognitive thinking, anger management, and drug abuse, was engaged with the child in videoconference visits as long as the Department allowed, and even attended the child's doctor visit via videoconference. There was no evidence offered regarding Father's ability to parent, other than the limitations created by his immediate incarceration, or regarding Father's social support system. It was noted, however, that he desired for his mother to be the child's caretaker while he was incarcerated, indicating he has family support.

In the context of termination of parental rights, the trial court is not simply determining whether it is in the best interest of the child to have a conservator other than the parent. Nor is it merely determining whether a child might have a better life with some other caregiver. *See In Interest of R.S.*, No. 02-18-00127-CV, 2018 WL 4183117, at *2 (Tex. App.—Fort Worth Aug. 31,

2018, no pet.) (providing best interest not "met merely with evidence that the child is better off living elsewhere"). If that is the focus, then the trial court would have more appropriately acted under Texas Family Code section 263.040(a) which allows the trial court to render a final order appointing a conservator *without terminating the rights of the parent* if the court finds (a) appointment of parent as managing conservator would not be in the best interest of the child because it would significantly impair the child's physical health or emotional development; and (b) it is not in the child's best interest to appoint a relative of the child or another person as managing conservator. *See generally In re M.A.T.T.*, No. 04-25-00294-CV, 2025 WL 3542057, at *11 (Tex. App.—San Antonio Dec. 10, 2025, no pet.) (mem. op.) (noting evidence failed to support finding that it was not in best interest of child to have relative appointed as conservator). In other words, the trial court is empowered to protect the child's placement, allow the child to be raised with his siblings, and even to extricate the Department from the child's life by appointing a relative as conservator—all without terminating Father's rights as a parent. *See* TEX. FAM. CODE § 263.404(a); *M.A.T.T.*, 2025 WL 3542057, at *11. *K.N.*, 2026 WL 1614378, at *11 (holding where father showed evidence legally insufficient to establish endangerment under subsection (E), it may be appropriate for lower courts to reassess appointment of the Department as managing conservator); *H.S.*, 2026 WL 1614496, at *13 (providing it may well be in child's best interest to remain connected with parent even after parent has committed one of actions described in (b)(1) if parent is on path to rehabilitation and reunification).[5]

---

[5] The Texas Child Welfare Law Bench Book specifically sets out the options available upon final trial of a case brought by the Department to protect the child's best interest. They include:

- Enter a final decree of conservatorship that returns the child to the parent or caregiver and dismisses DFPS;

- Enter a final decree of conservatorship that gives a relative permanent managing conservatorship, with or without termination of parental rights, and dismisses DFPS; or

But, in this case, the trial court determined it was in the best interest of the child to terminate any legal relationship with his parent—to wipe the parent out of the child's life forever and to forestall any future ability of the parent to gain access if his circumstances improve. *In re J.W.*, 645 S.W.3d 726, 751 (Tex. 2022) (providing termination of parental rights is "death penalty of civil cases" (quoting *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring))). Although the evidence clearly demonstrates that the child is in an appropriate placement and that Father is not able to be a conservator at this time, the only other factor that even tends to support termination is that he is currently incarcerated. But a parent's incarceration does not automatically establish termination of their parental rights is in the child's best interest. *In re S.R.L.*, 243 S.W.3d 232, 236 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *C.T.E.,* 95 S.W.3d at 466).

And, despite his incarceration, it is undisputed that he has actively sought to prepare himself to be a good parent upon his release, has sought to have his mother involved in the child's life, and has demonstrated an active desire to be part of the child's life. *See S.R.L.*, 243 S.W.3d at 236 (concluding evidence insufficient to support best interest finding where imprisoned parent with violent and unstable past, presented substantial and uncontradicted evidence he turned life around, took anger management classes, complied with all portions of service plan possible in prison, developed job skills, has home and family support structure in place to help upon release, and judge found he had never "done anything bad" to children). *C.T.E.*, 95 S.W.3d at 467–69 (holding evidence insufficient to support best interest finding when, among other things,

---

- Enter a final decree of conservatorship that names DFPS as the permanent managing conservator, with or without termination of parental rights.

SUPREME COURT OF TEXAS PERMANENT JUDICIAL COMMISSION FOR CHILDREN, YOUTH AND FAMILIES, TEXAS CHILD WELFARE LAW BENCH BOOK
http://benchbook.texaschildrenscommission.gov/library_item/gov.texaschildrenscommission.benchbook/104 (last visited June 1, 2026) ("Statutory: Final Hearing")

incarcerated father had prepared to be reunited with family by taking parenting and anger management classes, and job training). And although the trial court appeared to impliedly reject Father's testimony regarding the timing of his release, that evidence was not disputed, and there was no evidence offered to prove that he would be incarcerated more than two years post filing date. *See* TEX. FAM. CODE § 161.001(b)(1)(P) (providing termination on ground that parent knowingly engaged in criminal conduct that has resulted in the parent's conviction, confinement, and inability to care for the child for not less than two years from date of filing petition); *F.M.E.A.F.*, 572 S.W.3d at 733 (finding evidence legally insufficient where, among other things, mother was expected to be released from jail only a few months after the final hearing). None of the remaining factors set forth in section 263.307(b) or in *Holley* weigh in favor of termination of Father's parental rights as being in W.J.G.G.'s best interest.

Mindful of our standard of review, we recognize the trial court reasonably could have determined that the maternal aunt has provided a safe and stable home for W.J.G.G., that Father was incarcerated and could not do so, and that there was minimal evidence in the record of past, sustained periods of parenting by Father. We therefore hold that the evidence is legally sufficient that termination of Father's parental rights is in W.J.G.G.'s best interest. However, weighing all the evidence and considering the section 263.307(b) and *Holley* factors, considering the disputed and undisputed evidence presented at trial, and giving deference to the trial court's role as factfinder and judge of witness credibility, we conclude the evidence that a reasonable factfinder could not have credited in favor of the best-interest finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction that termination of Father's parental rights was in W.J.G.G.'s best interest. *See J.F.C.*, 96 S.W.3d at 266. As a result, we hold the evidence is

factually insufficient to support that termination of Father's parental rights is in W.J.G.G.'s best interest.

## CONCLUSION

We affirm the trial court's February 11, 2026 order of termination on the grounds of Texas Family Code section 161.001(b)(1)(N) and (P), modify the order to delete its finding on Texas Family Code section 161.001(b)(1)(E), reverse the trial court's finding that termination is in the best interest of W.J.G.G., and remand the cause for a new trial on best interest. *See J.O.A.*, 283 S.W.3d at 345; *K. L. v. C.P.*, No. 03-22-00704-CV, 2023 WL 3853624, at \*9 (Tex. App.—Austin June 7, 2023, no pet.) (mem. op.) (remanding case for new trial solely on issue of best interest); *In re K.D.*, 471 S.W.3d 147, 178 (Tex. App.—Texarkana 2015, no pet.) (same).

Lori Massey Brissette, Justice